# IN THE UNITED STATES BANKRUPTCY COOURT
# MIDDLE DISTRICT OF PENNSYLVIANIA

| | |
|---|---|
| In re Maranda Nichole Grasley,<br><br>      Debtor, | Chapter 13<br>Docket No.: 5:22-bk-22-02354-MJC |

## DECLARATION OF MATTHEW DOUGLAS GOTHARD

I, Matthew Douglas Gothard, hereby declare and state as follows:

1. My legal name is Matthew Douglas Gothard. I am over the age of 21 and am competent to make this declaration. I am a Senior Paralegal with Bread Financial Payments, Inc.

2. Comenity Capital Bank (the "Bank") and its affiliate servicers (hereinafter, collectively referred to as "Comenity") are all subsidiaries of Bread Financial Payments, Inc.

3. I am making this declaration in support of the response to the objection filed by Vicki Ann Piontek, attorney for Debtor in connection with the above matter. I am familiar with the facts set forth in this declaration, through personal knowledge and through review of account records maintained in the ordinary course of business by Comenity. I am familiar with the recordkeeping practices of Comenity. The contents of this declaration are believed to be true and correct based upon my personal knowledge of the processes by which Comenity maintains records. If called as a witness, I can testify competently to my knowledge of the facts set forth in this declaration.

4. Comenity Capital Bank is a Utah bank with its principal place of business in Draper, Utah.

5. The business records attached hereto are exact duplicates of the originals except for (1) any marking intended to identify the record as a copy and (2) any redaction intended to remove personal identifying information of the account holder.

6. In the ordinary course of its regular business, Comenity maintains electronic records related to each account. These records are made by, or from, information transmitted by an individual with knowledge of the events described therein at or near the time of the event described in each record. Among other things, these records enable Comenity to determine what documents were sent to a cardholder, and when those documents were sent. Comenity relies on these electronic records in the ordinary course of managing and servicing accounts.

Those records show the following:

7. On or about March 2, 2019, debtor Maranda Grasley ("Debtor") applied for and was issued a Big Lots credit card account with an account number ending in "5892" (the "Account").

8. The Account was subject to written terms and conditions that are reflected in a Credit Card Agreement (the "Account Agreement"). Attached as Exhibit A is a true and correct copy of the Account Agreement.

9. Pursuant to Comenity's policies and procedures, upon the opening of a credit card account, the Account Agreement is sent to the consumer as part of a Welcome Kit via U.S. Mail to the address on file. In this case, a copy of the Account Agreement was mailed to Maranda Grasley at the original address of record on the Account, of 316 Summerhill Ave. Berwick, PA 18603, via the United States Postal Service on or about March 3, 2019. Comenity has a system by which returned Welcome Kits and other mail is noted in an accountholder's records. Comenity has no record that the Welcome Kit or Account Agreement were returned as undeliverable.

10. Comenity's records reflect that the Account was sold to Midland Credit Management,

Inc. ("MCN") on or about June 13, 2022.

11.  Comenity's records reflect that the last purchase made on the Account prior to sale was on July 31, 2021.

12.  Comenity's records reflect that the last payment made on the Account prior to sale was on September 27, 2021.

I have read this declaration and affirm that the statements herein are based upon my own personal knowledge. I declare, under penalty of perjury under the laws of the United States of America, that the foregoing statements are true and correct.

Executed this 8th day of September, 2023

_____
Matthew Dothard

HP 0119-843; PO #0094050363; Overall Size: 9 panel; Flat 8.5 x 29.75, Folded 8.5 x 3.375; Paper: 40 # uncoated text; Color: Black both sides; Font Size used: CCA 8pt, Privacy 10pt & 12pt; 10pt type in boxes; 12pt headers and 16pt APR; Fonts used: Trade Gothic LT Std (regular, oblique, bold md, bold md2, bold no2 oblique), Zapf Dingbats

49867I008 (02/19)

## Your Big Lots Credit Card account agreement.

This Agreement covers the Terms and Conditions of your account with us. In this document, you will find important information about using and managing your account, including a Privacy Statement and information concerning your billing rights. Your use of the account, or failure to close the account within the 30 days of receiving this document, indicates your acceptance of the terms of this agreement, including the assessment of any interest charges and fees.

Section I of this Agreement also includes a Jury Trial Waiver and an Arbitration Provision in the event of a dispute.
- **You have a right to reject this Arbitration Provision.**
- **If you do not reject this Arbitration Provision, it will be part of this Agreement and will:**
  o Eliminate your right to a trial by jury; and
  o Substantially affect your rights, including your right to bring, join in or participate in class proceedings.
- **Section I does not apply to Covered Borrowers under the Military Lending Act. See Section J below.**

Please read each section carefully and keep this document for your records.

### In the following sections, you will find information on:

**Financial terms of your account:** An at-a-glance summary of the fees and charges associated with your account
- A. **Getting started:** the basics of your account
- B. **Keeping your account in good standing:** avoiding default, and what to do if your card is lost or stolen, as applicable
- C. **Learning more about your account:** credit plans, credit limits, and how payments are calculated and applied
- D. **Interest, fees and charges:** when and how fees and costs are applied to your account
- E. **Other important information:** legal rights, costs, and how we'll handle changes to your account
- F. **Disputes and reporting to consumer reporting agencies:** data we provide, and receive from, consumer reporting agencies, and what to do if you think there is an error on your periodic statement
- G. **Optional products:** how to protect your account from fraud or theft, and information on services that can help pay your debt in case of emergencies
- H. **Communicating with us:** what happens when you contact us
- I. **Arbitration and jury trial waiver:** how we'll resolve disagreements, including a jury trial waiver and Arbitration provision
- J. **Important Information for Covered Borrowers under the Military Lending Act**

**Privacy statement:** how we collect, use, share, and protect your personal information; and the privacy choices you can make.

### Financial terms of your account

#### Interest Rates and Interest Charges

| | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **29.99%** This APR will vary with the market based on the Prime Rate. |
| How to Avoid Paying Interest | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $2.00 per credit plan |
| For Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore. |

#### Fees

| | |
|---|---|
| Annual Fee | None |
| **Penalty Fees** | |
| Late Payment | Up to **$38.00** |
| Returned Payment | Up to **$38.00** |

**How We Will Calculate Your Balance:** We use a method called "daily balance." See your Account agreement for more details.

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

**Rate Information:** The following chart provides details on your rate as of February 1, 2019. We divide the APR by 365 to determine the daily periodic rate.

| | Add to Index | Maximum | Current APR | Daily Periodic Rate |
|---|---|---|---|---|
| Purchase APR | 26.74% | 29.99% | 29.99% | 0.08216% |

If this Agreement was provided to you at point of sale, see the Agreement sent with your new account welcome package for variable APR information in effect within 30 days of mailing.

We'll charge you a minimum charge of $2.00 per credit plan for any billing period in which interest is due. For additional information, see Rates in Section D.

**Minimum Payment:**

The amount you must pay each billing period ("Total Minimum Payment") is the total of minimum payments for Regular Revolving and promotional Credit Plan purchases plus any Past Due amounts. The Total Minimum Payment won't be less than $30.00. If your Account balance is less than $30.00, you must pay the amount indicated on your billing statement ("Statement") in full. The minimum payment due for each Regular Revolving Credit Plan will be the greater of:
(a) $5.00; or
(b) 3.5% of the New Balance shown on your Statement for that Credit Plan (rounded up to the nearest $1.00).

See Minimum Payment in Section C below for promotional credit plan minimum payment calculations.

The APR information described is accurate as of February 1, 2019. Due to a change in the index, this information may have changed. To find out more, call us at 1-888-566-4353 (TDD/TTY: 1-888-819-1918), or write us at Comenity Capital Bank, PO Box 183003, Columbus, Ohio 43218-3003 or visit our website at comenity.net/biglots.

### A. Getting Started

**Definitions**

In this Agreement, "We," "Us" and "Our" mean Comenity Capital Bank and any successor or assigns. "You" and "Your" mean each person who submits an application or solicitation for an Account with us. "Account" means your credit card account with us. "Card" means each credit card we issue for your Account, as applicable. "Credit Plan" means one or more payment program options Big Lots may ask us to offer from time to time.

**Upholding our Agreement**
- You agree to the terms of this Agreement, and promise to do everything required of you. If you sign or submit an application or solicitation to obtain credit from us, you'll be legally bound by this Agreement. You're also legally bound if you sign a charge slip, or permit someone else to use the credit provided.
- You agree that the credit extended under your Account will be used only for personal, family or household purposes and not for business or commercial purpose.
- If the Account is a joint Account, you and the joint Account holder will be bound by this Agreement. Each of you will be jointly and individually responsible for repaying all amounts due. If more than one person is responsible for this Account, we will only provide billing statements and communications to one of you.
- Any authorized user of your Account will be bound by the terms of this Agreement. One additional Card may be issued with the individual name of an authorized user embossed on the Card. If you want to revoke the use of your Account by an authorized user, either write us at the address, or call us at the phone number, shown on your Statement.
- You agree to pay for all transactions made on your Account by an authorized user, whether or not such transactions were authorized by you or made for your benefit.

**Card signature (as applicable)**

For your own protection, please sign your Card before using it. Keep in mind that your signature on the Card isn't a prerequisite to your obligation to pay amounts incurred on your Account.

**Using your Account**
- Your Account may be used to make purchases from Big Lots and other retailers we may determine acceptable by notifying you via electronic mail, statement message, website posting, or other method.
- We reserve the right to not honor transactions related to, including, but not limited to, gambling, ATM usage at casinos, and illegal activities.

**Making payments**
- Pay your Account by sending a check, money order, or cashier's check payable in U.S. dollars, to the name and address shown on your Statement specified for payments. Please don't send cash.
- Be sure to include your payment stub, do not staple your payment to the stub, use the envelope provided with your Statement and don't send any correspondence with your payment.
- If your payment doesn't meet these requirements, it may not be credited to your Account for up to five days, or may be rejected.
- All written communications concerning disputed amounts, including any check or other payment instrument marked with "payment in full" or similar language, must be sent to 6550 North Loop 1604 East, Suite 101, San Antonio, Texas 78247-5004.
  o We may accept a payment sent to any other address without losing any of our rights.
  o No payment shall operate as an accord and satisfaction without our prior written approval.

### B. Keeping your account in good standing

**Avoiding default**

**You'll be in default under this Agreement if you:**
- Fail to make any payment when due
- Violate any provision of this Agreement
- Pass away
- Become the subject of bankruptcy or insolvency proceedings
- Supply us with misleading, false, incomplete or incorrect information
- Are unable or unwilling to perform the terms or conditions of this Agreement
- Fail to supply us with any information we deem necessary
- Default under any other loan or agreement you have with us or any of our affiliates
- Become incompetent
- Exceed your Credit Limit
- Issue a payment returned unpaid by your bank for any reason

If we consider your Account in default, we may suspend your ability to make charges, close your Account, require you to pay the full amount you owe immediately or take any other action permitted by law. If applicable law requires us to do so, we'll tell you in advance and/or give you the opportunity to remedy your default.

**Reporting a lost or stolen card (as applicable)**

If you notice the loss or theft of your credit card or a possible unauthorized use of your card, you should write to us immediately at PO Box 183003, Columbus, Ohio 43218-3003 or call us at 1-888-566-4353 (TDD/TTY: 1-888-819-1918).

You will not be liable for any unauthorized use that occurs after you notify us. You may, however, be liable for unauthorized use that occurs before your notice to us. In any case, your liability will not exceed $50.

### C. Learning more about your account

**Credit Plans**
- Your Account may consist of a non-promotional ("Regular Revolving") Credit Plan and one or more promotional Credit Plans. Credit Plans offered and their particular features (including but not limited to minimum purchase requirements and minimum payment) may occasionally at our discretion and include one or more Regular Revolving or promotional Credit Plans.
- We may offer different promotional Credit Plans from time to time.
- If a promotional Credit Plan is offered at the time you open your Account, this Agreement will include information about the terms for the Plan, by use of an insert, attachment, or other written information provided as part of this Agreement.
- Normal late fees, returned payment fees and all other provisions apply to any promotional Credit Plan, unless inconsistent with a particular Credit Plan offering.
- If the promotional Credit Plan purchase isn't paid in full before the promotional period ends, the balance will be transferred to your Regular Revolving balance.
- Promotional Credit Plans may include:
  o Waive Interest, Payment Required  o Defer Interest, Payment Required
  o Waive Interest, Equal Payment  o Defer Interest, Low Payment
  o Waive Interest, Low Payment  o Low APR, Equal Payment
  o Defer Interest, Equal Payment  o Budget Payment

**Skip-payment option**
- At our discretion, we may allow you to skip making the Minimum Payment. Interest Charges will be assessed during the skip-payment period, but a late fee won't be imposed. This will not be considered a waiver of any of the rights granted by this Agreement.
- All other terms of your Account apply during the skip-payment period.

**Credit limit**
- Your Credit Limit is the total maximum amount we permit you to owe us at any time.
- You may not exceed any Credit Limit we set for your Account.
- If you do exceed your Credit Limit, we can still charge you for all transactions, interest and other charges without giving up any of our rights under this Agreement.
- We may change your Credit Limit at any time.

**Account cancellation**
- You may cancel your Account. You're still obligated to pay the full amount you owe us.
- We may cancel your Account at any time, for any reason.
- We may refuse to authorize any purchase on your Account. We may also suspend your Account and your right to use your Card, including each Card you give to others.
- We may stop offering any Credit Plan at any time, for any reason.
- Cancellation or suspension of your Account doesn't negate your obligation to pay any amount you owe us.
- Cancellation of your Account includes each Card you give to others.

**Minimum Payment**
- You can pay all of your Account balance at any time without penalty.
- You must pay at least the Total Minimum Payment for each billing period by the Payment Due Date shown on your Statement.
- The Minimum Payment is the total of the minimum payments for the Regular Revolving and promotional Credit Plans plus any Past Due amounts.
- The Total Minimum Payment won't be less than $30.00. If your current balance is less than $30.00, you must pay the amount indicated on your Statement in full.
- The minimum payment for each Credit Plan is calculated as follows:
  o The minimum payments for Regular Revolving Credit Plans, Waive Interest, Payment Required and Defer Interest, Payment Required Credit Plans will be the greater of:
    (a) $5.00; or
    (b) 3.5% (rounded up to the nearest $1.00) of the New Balance shown on your Statement for that Credit Plan.
  o The minimum payment for the Waive Interest, Equal Payment and Defer Interest, Equal Payment Credit Plans will be the amount of the purchase divided by the number of months between the date of the purchase and the promotional period end date (minimum $5.00) rounded up to the nearest $1.00.
  o The minimum payment for the Low APR, Equal Payment Credit Plan will be the amount of the purchase including the calculated interest charges that will be assessed from the date of purchase through the end of the promotional period divided by the number of months between the date of the purchase and the promotional period end date (minimum $5.00) rounded up to the nearest $1.00.
  o The minimum payment for the Waive Interest, Low Payment and Defer Interest, Low Payment Credit Plans will be the greater of:
    (a) $5.00 or
    (b) 1.0% (rounded up to the nearest $1.00) of the New Balance shown on your Statement for that Credit Plan.
  o For each Budget Payment Credit Plan or Open Charge Budget Payment Credit Plan, fixed monthly payments of $49, $99, $149, $199, or $299, based on the transaction amount.
  o For Open Charge credit plans (except Open Charge Budget Payment Credit Plans), if your balance increases during the Open Charge period, your minimum payment will increase. The minimum payment for each Open Charge plan will be calculated based on the above Credit Plans.

**Payment application**
- We reserve the right to apply payments equal to or less than the Total Minimum Payment however we see fit, which may result in balances subject to lower interest rates being paid prior to other balances. This may also result in higher interest charges.
- Any payment you make in excess of the required Total Minimum Payment will be allocated to your Account as required by applicable law.
- Excess payments received before a deferred interest promotion expires are applied to the deferred interest promotional balance first in the last two billing periods of the promotional period.

### D. Interest, fees and charges

**Interest charges**
- Interest charges begin on a transaction, fee or interest from the day added to the daily balance and continue until the balance is paid in full.
- There is a Grace Period on Regular Revolving Credit Plan purchases. This means we will not charge interest on such purchases if you pay in full each period.
- We will not charge interest on any portion of a payment allocated to the Regular Revolving Credit Plan that is paid within an applicable Grace Period.
- If you make a purchase under any Waive Interest Credit Plan, we won't charge interest on the purchase if you pay the total purchase amount before the end of the promotional period, we'll add the remaining amount to your Regular Revolving balance. We'll also begin charging interest on the purchase from the first day after the promotional period ends.
- If you make a purchase under any Defer Interest Promotional Credit Plan and don't pay the total amount before the end of the promotional period, we'll add the remaining purchase amount and the amount of accrued interest to your Regular Revolving balance.
- If you make a purchase under a Low APR, Equal Payment Credit Plan, interest will be assessed from the date of purchase through the end of the promotional period.

**How we calculate Interest Charges on your Account**

We calculate interest separately for each Credit Plan, using a "Daily Balance" to determine interest charges for each billing period. Our calculation method is as follows:
- We start with the beginning balance on your Account each day (including unpaid interest charges and fees).
- We subtract any payments or credit adjustments (treating any net credit balance as a zero balance) and add new transactions and debit adjustments posted as of that day. This gives us the "Partial Daily Balance" for the day.
- We then multiply the Partial Daily Balance for the day by the Daily Periodic Rate. This gives us the "Daily Interest Charge" for the day, which we add to the day's Partial Daily Balance.
- We've now determined the "Daily Balance," which will be the beginning balance for the following day. This results in daily compounding of interest charges.
- At the end of each billing period, we add together each Credit Plan's Daily Interest Charge and make other adjustments, which gives us the total interest charge.
- Your Statement will show a Balance Subject to Interest Rate, which is the sum of the Daily Balances for each day in the billing period divided by the total number of days.

**Rates**
- To calculate a variable rate, for each billing period, we use an Index. The Index is the U.S. Prime Rate published in the "Money Rates" section of *The Wall Street Journal* on the last business day of the calendar month preceding the month in which the billing period begins. (Our business days are Monday through Friday, excluding holidays.)
- Any variable APR will increase on the first day of the billing period after the Index increases.
- An increase or decrease in the APR will result in a corresponding increase or decrease in the amount of interest and may increase the Total Minimum Payment.
- Your APR for Purchases will not exceed 29.99%.

**Other fees and charges**

You agree to pay the following fees and charges:
- **Late Fee:** If you don't pay at least the Minimum Payment Due by the Payment Due Date, we will charge you a late fee.
  o The fee is $27.00 if you were not charged a late fee during any of the prior six billing periods.
  o Otherwise, the fee is $38.00.
  o This fee will not exceed the amount permitted by applicable law.
- **Returned Payment Fee:** We may charge you a fee for each payment that your bank doesn't honor for any reason.
  o The fee is $27.00 if you were not charged a returned payment fee during any of the prior six billing periods.
  o Otherwise, the fee is $38.00.
  o This fee will not exceed the amount permitted by applicable law.
- Although we may decide to do so, we aren't required to attempt to collect a payment more than once.
- **Document Fees:** If we provide you with a copy of any Statement, sales draft or similar document at your request (except in connection with billing error inquiries or resolution), we may charge the Account the following fee(s), subject to any limitations of applicable law:
  o Statement copy - $6.00
  o Sales/Credit Draft copy - $6.00
  o Check/Money Order copy - $6.00
- **Alternative Payment Method Fee:** We may offer alternative payment methods that allow you to make individual, expedited payments to your Account over the phone. If you choose to use this payment method, we may assess the current fee we charge for this service, subject to any limitations of applicable law. Currently, that fee is up to $15.00 but may change. We'll let you know the current fee before you authorize any payment(s), and you can withdraw your request if you don't want to pay the fee.

### E. Other important information

**Collection costs**

You agree to pay our reasonable costs for collecting amounts due, including reasonable attorneys' fees and court costs incurred by us or another person or entity, to the extent not prohibited by applicable law and except as provided below.
- **AL Residents:** We will not charge attorneys' fees if your unpaid balance is $300 or less.
- **MD Residents:** We will not charge you for costs other than attorneys' fees.
- **NH Residents:** Reasonable attorneys' fees may be awarded to you if you prevail in any action by or against us.
- **WI Residents:** If legal action is taken, we may seek statutory attorneys' fees and costs, which you will pay if they are granted by the court.

---

**Comenity**

rev. 10/18

**WHAT DOES COMENITY DO WITH YOUR PERSONAL INFORMATION?**

**FACTS**

**Why?** Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What?** The types of personal information we collect and share depend on the product or service you have with us. This information can include:
- Social Security number and income
- Account balances and transaction history
- Credit history and credit scores

**How?** All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Comenity chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Comenity share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

**To limit our sharing**
- Credit Card customers — our menu will prompt you through your choices:
  o Comenity Bank customers: Call 1-800-220-1181 (TDD/TTY 1-800-695-1788)
  o Comenity Capital Bank customers: Call 1-877-287-5012
  o (TDD/TTY 1-888-819-1918)
- Comenity Direct (online deposits) customers: Call 1-833-755-4354; dial 7 for a representative, for operator/relay assistance, first dial 711.

**Please note:**
If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice.
However, you can contact us at any time to limit our sharing.

**Questions?**
- Credit Card customers: Call 1-866-423-1097
- Comenity Direct (online deposits) customers: Call 1-833-755-4354

**Changes**
We may add, change, or delete the terms of your Account. If required by applicable law, we will give you advance written notice of the change(s) and a right to reject the change(s).

**Security Interest**
You grant us a security interest in all goods you purchase through the use of the Account, now or at any time in the future and in all accessions to and proceeds of such goods. We waive any security interest we may have in your principal dwelling, to the extent that it would otherwise secure any obligation arising hereunder.

**Changes to your information**
You agree to notify us immediately of any changes to your name, mailing address, electronic mail address or telephone number(s).

**Governing Law**
THIS AGREEMENT IS GOVERNED BY UTAH AND APPLICABLE FEDERAL LAW. THIS IS THE LAW WE ARE SPEAKING OF WHEN WE REFER TO A TERM PERMITTED OR REQUIRED BY APPLICABLE LAW.

**Transfer of Rights/Assignment**
Your rights under this Agreement can be transferred by you, by operation of law or otherwise, but your obligations will be binding upon your estate or personal representatives. We may transfer or assign your Account and/or this Agreement, or any of our rights under this Agreement, to another person or entity at any time without prior notice to you or your consent.

**No Waiver of Rights**
We will not lose our rights under this Agreement because we delay or do not enforce them.

**Severability**
If any provision of this Agreement is in conflict with applicable law, that provision will be considered to be modified to conform with applicable law.

**Notice to New Jersey Residents**
All provisions of this agreement are valid, enforceable and applicable in New Jersey.

**F. Disputes and Reporting to Consumer Reporting Agencies**

**Credit Reports**
- You give us permission to investigate your credit record.
- You agree that a credit report may be requested in connection with the processing of your credit application. A report may also be requested in connection with a credit extension, credit limit request, Account renewal or update, Account collection action, or dispute investigation. Upon request, we will tell you the name and address of any consumer reporting agency that furnished a report on you. You consent to the obtaining of such reports by signing or otherwise submitting an application or solicitation.
- You understand that we may report negative information (such as, late payments, missed payments, or other defaults) about your Account to consumer reporting agencies.
- You give us permission to provide information about your Account to consumer reporting agencies and other creditors, as well as to the retailer whose name appears on your Card.

**Credit report disputes**
If you believe the Account information we reported to a consumer reporting agency is inaccurate, you may submit a direct dispute to Comenity Capital Bank, PO Box 182120, Columbus, Ohio 43218-2120.
Your written dispute must provide sufficient information to identify the Account and specify why the information is inaccurate:
- Account Information: Your name and Account number
- Contact Information: Your address and telephone number
- Disputed Information: Identify the Account information disputed and explain why you believe it is inaccurate
- Supporting Documentation: If available, provide a copy of the section of the credit report showing the Account information you are disputing

We will investigate the disputed information and report the results to you within 30 days of receipt of the information needed for our investigation. If we find that the Account information we reported is inaccurate, we will promptly provide the necessary correction to each consumer reporting agency to which we reported the information.

**Your Billing Rights: Keep This Document For Future Use**
This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**What To Do If You Find A Mistake On Your Statement**
If you think there is an error on your statement, write to us at: Comenity Capital Bank, PO Box 182620, Columbus, Ohio 43218-2620
In your letter, give us the following information:
- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us. If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.
To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.
If all of the criteria above are met and you are still dissatisfied with the purchase, contact us in writing at:
Comenity Capital Bank
PO Box 182620, Columbus, Ohio 43218-2620
While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**G. Optional products**

**Credit insurance (as applicable)**
Purchasing credit insurance is optional. If you do choose to carry credit insurance coverage, the premium charge will be added to your Account as a purchase on the last day of each billing period. You can cancel your coverage at any time.

**Account Assure Debt Cancellation (as applicable)**
- Purchasing Account Assure is optional.
- Enrolling in Account Assure does not affect the terms of your existing credit agreement.
- The Account Assure fee is based on your monthly statement balance, which is your balance on the last day of each billing period.
- You will receive terms and conditions, which you should carefully read for all benefit details and exclusions.
- You may cancel Account Assure at any time.
- If you are currently unemployed, disabled, hospitalized or retired you are not eligible for Account Assure benefits for your present situation; however, you may be eligible for other benefits based on future events.

**H. Communicating with us**

**Communicating to you about your Account**
If we need to contact you to service your Account or to collect amounts you owe to us, you give direct consent to us, as well as servicers, agents, independent contractors, contractors, debt collectors or collection agencies, and to anyone to whom we may sell your Account, to communicate with you in any way, such as calling, texting, or email via:
1. Your cell, landline, text number or any number you provide, use to contact us, or any number which you may utilize, or to any other device or service for which you may be charged for the call, including, but not limited to, Voice Over Internet Protocol ("VoIP");
2. Any email address you provide to us or any other person or company that provides any services in connection with this Agreement;
3. Automated telephone dialing systems;
4. Pre-recorded or artificial voice messages and any other form of communication.

You also agree that these communications aren't unsolicited for purposes of any state or federal law and you understand that communications may result in additional mobile, text message, data charges or other charges.

**Phone monitoring**
- To provide you with high-quality service, phone communication with us is monitored and/or recorded.
- You agree that we monitor and/or record any phone calls between you and us.
- Please inform all authorized cardholders of this provision, including anyone acting on your behalf or making payments on this Account.

**Communication in Languages Other Than English**
You agree to receive all communications and correspondence relating to your Account in English. We may, at our option, communicate with you and/or provide translated documents in a language other than English. Any such communications or documents are provided solely as a courtesy. We may stop communicating with you in non-English languages and/or providing translated documents at any time. While we have attempted to ensure the accuracy of our translations, we are not liable for any inaccuracies in translation or for any misunderstandings due to differences in language usage or dialect. In the event of any inconsistencies between the English version and the translation, the English version will control.

**For Wisconsin residents:**
If you are married, please contact us immediately upon receipt of this Agreement at 1-888-566-4353 (TDD/TTY 1-888-819-1918) and provide us with the name and address of your spouse. We are required to inform your spouse that we have opened a credit account for you.

**For bankruptcy notifications:**
All bankruptcy notices and related correspondence to Comenity Capital Bank should be sent to the following address: Comenity Capital Bank, Bankruptcy Department, PO Box 183043, Columbus, Ohio 43218-3043.

**I. Arbitration and jury trial waiver**

**For Covered Borrowers under the Military Lending Act (MLA)**
The MLA prohibits us from requiring you to submit to arbitration as a condition of extending credit. For additional information see Section J below.

**A. Jury trial waiver**
TO THE EXTENT PERMITTED BY LAW, YOU AND WE WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF A LAWSUIT ARISING OUT OF OR RELATED TO THIS AGREEMENT. THIS JURY TRIAL WAIVER SHALL NOT AFFECT THE ARBITRATION PROVISION BELOW (INCLUDING THE JURY TRIAL WAIVER CONTAINED THEREIN). YOU AND WE EACH REPRESENT THAT THIS WAIVER IS GIVEN KNOWINGLY, WILLINGLY AND VOLUNTARILY.

**B. Notice and cure**
Prior to bringing a lawsuit or initiating an arbitration that asserts a claim arising out of or related to this Agreement (as further defined below, a "Claim"), the party asserting the Claim (the "Claimant") shall give the other party (the "Defendant") written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days, to resolve the Claim. Any Claim Notice to you shall be sent in writing to the address we have in our records (or any updated address you subsequently provide to us). Any Claim Notice to us shall be sent by mail to Comenity Capital Bank, PO Box 182436, Columbus, Ohio 43218-2436 (or any updated address we subsequently provide). Any Claim Notice you send must provide your name, address and Account number. Any Claim Notice must describe the nature of the Claim and the relief that is demanded. You may only submit a Claim Notice on your own behalf and not on behalf of any other party. No third party, other than a lawyer you have personally retained, may submit a Claim Notice on your behalf. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

**C. Arbitration provision**
READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.

**1. Your Right to Reject:** If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at Comenity Capital Bank, PO Box 182422, Columbus, Ohio 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not constitute rejection of any prior provision of this Agreement or of your ability to obtain credit.

**2. Parties Subject to Arbitration:** Solely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms "we," "us" and "our" mean (a) Comenity Capital Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies (the "Bank Parties"); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

**3. Covered Claims:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account. "Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof (including, without limitation, the prohibition against class proceedings, private attorney general proceedings and/or multiple party proceedings described in Paragraph C.7 (the "Class Action Waiver"), the last sentence of Paragraph C.13 and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

**4. Starting an Arbitration:** Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different Claim. Arbitration is started by giving a written demand for arbitration to the other party. We will not demand to arbitrate an individual Claim that you bring against us in small claims court or your state's equivalent court, if any. But if that Claim is transferred, removed or appealed to a different court, we then have the right to demand arbitration.

**5. Choosing the Administrator:** "Administrator" means the American Arbitration Association ("AAA"), 120 Broadway, 21st Floor, New York, NY 10271, www.adr.org; JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com; or any other company selected by mutual agreement of the parties. If both AAA and JAMS cannot or will not serve and the parties are unable to select an Administrator by mutual consent, the Administrator will be selected by a court. The arbitrator will be appointed by the Administrator in accordance with the rules of the Administrator. However, the arbitrator must be a retired or former judge or a lawyer with at least 10 years of experience. You get to select the Administrator if you give us written notice of your selection with your notice that you are electing to arbitrate any Claim or within 20 days after we give you notice that we are electing to arbitrate any Claim (or, if you dispute our right to require arbitration of the Claim, within 20 days after that dispute is finally resolved). If you do not select the Administrator on time, we may do it. Notwithstanding any language in this Arbitration Provision to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any Administrator that has in place a formal or informal policy that is inconsistent with the Class Action Waiver.

**6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights:** IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

**7. Prohibition Against Certain Proceedings:** IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOU NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.

**8. Location and Costs of Arbitration:** Any arbitration hearing that you attend must take place at a location reasonably convenient to you. We will pay any and all fees of the Administrator and/or the arbitrator if applicable law requires us to, if you prevail in the arbitration or if we must bear such fees in order for this Arbitration Provision to be enforced. If you demand an arbitration, we will pay your reasonable attorneys' and experts' fees if you prevail or if we must bear such fees in order for this Arbitration Provision to be enforced. Also, we will bear any fees if applicable law requires us to.

**9. Governing Law:** This Arbitration Provision involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and not by any state arbitration law. The arbitrator must apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law. The arbitrator may award any remedy provided by the substantive law that would apply if the action were pending in court (including, without limitation, punitive damages, which shall be governed by the Constitutional standards employed by the courts). At the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award.

**10. Right to Discovery:** In addition to the parties' rights to obtain discovery pursuant to the arbitration rules of the Administrator, either party may submit a written request to the arbitrator to expand the scope of discovery normally allowable under the arbitration rules of the Administrator. The arbitrator shall have discretion to grant or deny that request.

**11. Arbitration Result and Right of Appeal:** Judgment upon the arbitrator's award may be entered by any court having jurisdiction. The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the Administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Provision to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with Paragraph C.8 above.

**12. Rules of Interpretation:** This Arbitration Provision shall survive the repayment of all amounts owed under this Agreement, the closing of the Account, any legal proceeding and any bankruptcy to the extent consistent with applicable bankruptcy law. In the event of a conflict or inconsistency between this Arbitration Provision, on the one hand, and the applicable arbitration rules or the other provisions of this Agreement, on the other hand, this Arbitration Provision shall govern. This Arbitration Provision replaces any Prior Arbitration Agreement.

**13. Severability:** If any portion of this Arbitration Provision, other than the Class Action Waiver, is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. If a determination is made that the Class Action Waiver is unenforceable, only this sentence of the Arbitration Agreement will remain in force and the remaining provisions shall be null and void, provided that the determination concerning the Class Action Waiver shall be subject to appeal.

**14. Special Payment:** If (1) you submit a Claim Notice in accordance with Paragraph B above on your own behalf (and not on behalf of any other party); (2) we refuse to provide you with the relief you request; and (3) an arbitrator subsequently determines that you were entitled to such relief (or greater relief), the arbitrator shall award you at least $5,100 (plus any fees and costs to which you are entitled).

**J. Important Information for Covered Borrowers under the Military Lending Act**

- For New Accounts - Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).
- A "Covered Borrower" is a consumer who, based on the determination made in accordance with 32 CFR Part 232.5, is entitled to the Limitations on Terms of Consumer Credit Extended to Service Members and Dependents under 32 C.F.R. Part 232. Your final statement will indicate whether you are a Covered Borrower, based on a review of the Department of Defense's database and/or a report from a consumer-reporting agency. If you're a Covered Borrower, we will notify you in writing no later than 60 days after the determination made in accordance with 32 CFR Part 232.5.
- This Agreement shall be interpreted to comply with the Military Lending Act, including its restrictions on permissible loan terms and limitations on interest and fees. If you are a Covered Borrower: (a) the Arbitration Provision and jury trial waiver shall not apply to you; (b) any interest or fees in excess of the permitted limit shall be reduced by the amount necessary to satisfy that limit and any amounts collected in excess of the permitted limit shall be refunded by crediting your Account or by making a direct payment to you; and (c) any other provision of this Agreement that is inconsistent with the Military Lending Act shall not apply to you.
- To hear this Military Lending Act disclosure and the payment obligations thereunder, call toll free at 1-866-230-0418; TDD/TTY -1-888-819-1918.

**comenity**
Comenity Capital Bank, Salt Lake City, UT

498671008 (02/19)

---

## Page 2

**Who we are**

**Who is providing this notice?**
This privacy notice is provided by the Comenity family of companies, including Comenity Bank and Comenity Capital Bank.

**What we do**

**How does Comenity protect my personal information?**
To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.

**How does Comenity collect my personal information?**
We collect your personal information, for example, when you
- open an account or provide account information
- make deposits or withdrawals from your account
- give us your income information
- use your credit or show your driver's license

We also collect your personal information from others, such as credit bureaus, affiliates, or other companies.

**Why can't I limit all sharing?**
Federal law gives you the right to limit only
- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your account.

**What happens when I limit sharing for an account I hold jointly with someone else?**
Your choices will apply to everyone on your account.

**Definitions**

**Affiliates**
Companies related by common ownership or control. They can be financial and nonfinancial companies.
- Our affiliates include companies with a Comenity name; financial companies such as Comenity Bank, Comenity Capital Bank; and nonfinancial companies such as Epsilon, Alliance Data, and LoyaltyOne.

**Nonaffiliates**
Companies not related by common ownership or control. They can be financial and nonfinancial companies.
- Nonaffiliates we share with can include financial service providers, retailers, publishers, and nonprofit organizations.

**Joint marketing**
A formal agreement between nonaffiliated financial companies that together market financial products or services to you.
- Our joint marketing partners may include lenders and insurance companies.

**Other important information**
We also will comply with more restrictive state laws to the extent that they apply, for example, Vermont or California.

Case 5:22-bk-02354-MJC    Doc 108    Filed 10/20/23    Entered 10/20/23 09:22:17    Desc Main Document    Page 5 of 5