UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In RE: Maranda Grasley : | Chapter 13 |
| Debtor : | |
| : | 22-02354 |
| Maranda Grasley, : | |
| Objector : | Re. Claim No. 5 |
| v. : | |
| Midland Credit Management, Inc. : | |
| Respondent / Claimant : | |

## AMENDED OBJECTION TO AMENDED PROOF OF CLAIM

1. Objector is Maranda Grasley, Debtor in the above captioned Bankruptcy.

2. Respondent / Claimant is Midland Credit Management, Inc., a business entity organized under the laws of the State of Kansas.

3. Claimant has filed a proof of claim (POC) for an alleged debt for related to "Revolving Credit / Services Rendered." See line 8 of the Proof of Claim. See attached copy of the proof of claim attached as an exhibit to this objection.

# APPLICABILITY OF 11 USC 558 and 11 USC 502(b)(1)

4. The previous paragraphs of this pleading are incorporated by reference and made a part of this pleading.

5. 11 USC 558 reads as follows.

> 11 U.S. Code § 558 - Defenses of the estate
> The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

6. 11 USC 502(b)(1) reads as follows.

> (b)Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> (1)such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

7. Any substantive defense that the Debtor would have under Pennsylvania state law should also be a defense to the proof of claim in this case under 11 USC 558 and 11 USC 502(b)(1).

8. Even a procedural defense that the Debtor has under Pennsylvania state law should also be a defense to a proof of claim under 11 USC 558 and 11 USC 502(b)(1) if the defense is "outcome determinative." This is consistent with the Erie Doctrine which holds that in federal litigation state procedural laws apply in Federal Courts if they are "outcome determinative." See Erie Railroad Co. v. Tompkins :: 304 U.S. 64 (1938).

9. Debtor wishes to assert certain substantive and procedural defenses under Pennsylvania state law that would apply if the case were litigated in state court. Such defenses are set forth below. The defenses include but are not limited to substantive contract law as well as the laws in Pennsylvania regarding the assignments of debts.

10. Debtor is not disputing that she had an account with Synchrony bank that is the subject of this proof of claim. Instead Debtor is raising defenses related to excessive finance charges and she is challenging the validity of the purported assignment of the account from Syncrhony Bank to Claimant.

## NECESSITY OF A PROPERLY FILED PROOF OF CLAIM

11.     The previous paragraphs of this Complaint are incorporated by reference.

12.     Only a properly filed proof of claim enjoys a presumption of validity. A vague or ambiguous proof of claim is not a properly filed proof of claim and thus does not enjoy a presumption of validity.  See Klemick v. eCast, United States Bankruptcy Court for the Middle District of Pennsylvania, 04-55010 (2006), and United States District Court for the Middle District of Pennsylvania. 06-CV-2252 (2007).

13.     Vagueness, ambiguity, contradictions or inconsistencies may not necessarily negate the proof of claim, but at the very least may provide cause for the Court to order the Claimant to amend the Proof of Claim.  See Klemick v. eCast, United States Bankruptcy Court for the Middle District of Pennsylvania, 04-55010 (2006), and United States District Court for the Middle District of Pennsylvania. 06-CV-2252 (2007).

# COUNT ONE: INSUFFICIENT EVIDENCE OF
# THE PURPORTED GOVERNING CONTRACT

14. The previous paragraphs are incorporated by reference and made a part of this pleading.

15. Claimant has attached a purported contract / cardholder agreement to the amended proof of claim. By doing so Claimant stated or implied that such document was the governing contract for the account which is the subject of the POC. See attached exhibits.

16. The purported contract provided filed by Claimant is highly questionable for reasons including but not limited to the following.

a. Debtor's signature does not appear on the purported contract.

a. There is no date on the purported governing contract.

b. The purported governing contract does not contain Debtor's address, unlike the statements supplied by Claimant which do contain Debtor's address.

c. The Proof of Claim does not demonstrate that the purported contract was ever sent to the Debtor or that Debtor received it.

d. There is no account number on the purported contract linking this account to the invoices supplied by Claimant.

e. Debtor's Counsel wrote to Claimant requesting documentation of when the purported governing contract was sent to Debtor by the original creditor and when it was received. See attached exhibits. But Debtor has not provided such information except as set forth in the paragraph below.

17. Claimant has filed an affidavit signed by Angel Nayman, "Vice President of Litigation Support," of Synchrony Bank, dated September 18, 2023, and filed October 20, 2023. The affidavit states that the account was opened on June 10, 2021, and that the contract was mailed to the Debtor by Synchrony Bank "on or about June 13, 2021." But the affidavit is impermissible hearsay according Federal Rule of Evidence 801. It does not fit within the business record exception of Federal Rule of Evidence 803(6) or any other exception to the hearsay rule. It is not a true business record under Rule 803(6) because it was clearly made after the fact with an eye to

litigation. See Aamco Transmissions v. Baker United States District Court for the Eastern District of Pennsylvania, 06-CV-05252 (2008).

18. Claimant's affidavit dated September 18, 2023 does not specify the date on which the contract / card holder agreement was mailed to the Debtor by Synchrony Bank. Instead the affidavit states "on or about June 13, 2021." The "on or about June 13, 2021" appears to be a guess or estimation and not based on any business record.

19. The Affidavit dated September 18, 2023 and filed October 20, 2023, contains an entirely different cardholder agreement than that which was attached to the Proof of Claim. A side by side comparison of the two purported agreements reveals that they are NOT THE SAME AGREEMENTS. They have contradictions which including but are not limited to the following.

    a. The purported cardholder agreement attached to the amended proof of claim filed June 28, 2023 contains certain serial numbers or other type of identifying numbers or codes which to

NOT appear on the purported cardholder agreement filed with the affidavit filed October 20, 2023.

b. The purported cardholder agreement filed with the affidavit filed October 20, 2023 contains a signature block of one Margaret Keane, CEO of Synchrony Bank which is not present on the purported agreement filed with the proof of claim.

c. Upon information and belief, Margaret Keane resigned as the CEO of Synchrony Bank in April of 2021, according to numerous internet search results which Debtor asks the Court to take judicial notice of. According to the Affidavit filed on October 20, 2023 the account was opened on June 10, 2023, and the purported cardholder agreement signed by Margaret Keane attached to said affidavit was mailed to the Debtor by Synchrony Bank on or about June, 2021 approximately 3 months after she had left her position as the CEO of Synchrony Bank. It makes little sense that a cardholder agreement bearing the wrong name for the bank CEO would have been mailed to Debtor when Synchrony Bank's affidavit said it was mailed.

d. Both the purported cardholder agreement / governing contracts have different interest rate tables.

e. The Affidavit dated September 18, 2023 and filed October 20, 2023 does not mention anything about the purported cardholder agreement attached to the Proof of Claim. No explanation is given in the affidavit about the conflicting cardholder agreement attached to the proof of claim.

20. The POC includes interest and other fees and charges which if not based on a valid governing contract are not warranted. Without sufficient evidence of the existence of a valid contract, Claimant has no basis for including interest and other fees which would make up the balance. Failure to provide adequate evidence of the contract should be fatal to the claim. Atlantic Credit and Finance v. Giuliana, 829 A.2d 340, Superior Court of Pennsylvania (2003).

21.     At best for Claimant, this Court may have authority to award an amount based on the principal balance without interest or penalties which the Debtor has offered to pay claimant several times.

22.     Claimant argues in the answer to Debtor's objection to proof of claim that Debtor and the original alleged creditor formed an implied contract under the "account stated theory" a recognized legal doctrine in Pennsylvania whereby a contract was formed by Debtor making purchases and then the original alleged creditor sent invoices and then the Debtor paid on those invoices thereby assenting to the terms stated on the invoices.  See See Target National Bank v. Samanez Allegheny County Court of Common Pleas, AR06-0094 18 (2007).

23.     Claimant's arguments about an implied contract and the "account stated" theory are problematic because the invoices do not show that the Debtor agreed to all of the finance charge in the proof of claim.  Those finance charges do not appear on the invoices.  The last invoice attached to the amended proof of claim only has a balance of 1,066.84, not $1,452.35 stated in the Proof of Claim.

24. The "Proof of Claim-Account Details" attached to the Amended Proof of claim states a principal balance of "$1,005.55" and finance charges of "$446.80". But these "finance charges" are not detailed in the invoices that Debtor paid on. The invoices alone do not demonstrate that Debtor agreed to $446 in finance charges. The invoices do not show how the original alleged creditor came up with the $446.80 in "finance charges." Therefore claimant's "account stated" argument fails because the invoices do not show that Debtor ratified the $446.80 in "finance charges" by paying. An account stated argument must be supported by more specific facts. See Target National Bank v. Samanez Allegheny County Court of Common Pleas, AR06-0094 18 (2007).

# COUNT TWO: CONTRADICTIONS IN DOCUMENTS FILED BY CLAIMANT

25. The previous paragraphs are incorporated any reference and made a part of this pleading.

26. Claimant has filed two entirely different conflicting cardholder agreements in this case, one attached to the amended proof of claim and one attached to an affidavit filed October 20, 2023. The conflicting features of these tow different purported cardholder agreements are detailed above in Count One.

27. There are major discrepancies between Claimant's answer to Debtor's objection to proof of claim filed August 28, 2023 and the amended proof of claim filed June 28, 2023.

   a. Claimant's answer filed August 28, 2023 appears to detail more payments than what are shown in the exhibits to Claimant' proof of claim.

   b. According to Claimant's own data attached to the Amended POC filed June 28, 2023, the account was open on June 10, 2021, and

the last payment on the account was made by Debtor on October 13, 2021. This does not match up with what Claimant has plead in their answer filed August 28, 2023 which states that Debtor used the account for "years." This could not have happened based on the documents supplied by Claimant in the POC.

c. The last invoice attached to the Amended POC dated June 28, 2023 states a balance of $1,066.84 allegedly owed to the original creditor, Synchrony Bank, not $1,452.35 as purported in the proof of claim.

d. In Claimant's answer, filed August 28, 2023, Claimant argues that it does not matter whether Debtor received a copy of the governing contract or not because Debtor used the account for "years." This is a blatantly false factual statements intended to bolster Claimant's "account stated" argument. Certain documents attached to the amended Proof of Claim, overlooked by Claimant's Counsel reveal that the account was only open from June 10, 2021 to June 3, 2022. Therefore Debtor could not possibly have used the account for "years." Such blatantly false statement was made by Claimant's

Counsel with the intent to bolster the "account stated" argument. The statement about the account being used by Debtor for "years" is confusing and has the possible effect of manipulating the Court if not corrected by Claimant.

28. Debtor's Counsel has made Several attempts have been made by Debtor's Counsel to get Claimant's Counsel to correct this false factual statement, but Claimant's Counsel refuses to correct it. .

## COUNT THREE: INSUFFICENT EVIDENCE OF THE ASSIGNMENT OF THE CLAIM

29. The previous paragraphs are incorporated by reference and made a part of this pleading.

30. Debtor's Counsel wrote to Claimant and requested a copy of all documents related to the purported assignment of the alleged debt for this proof of claim, but not all documents have been provided by Claimant to Debtor's Counsel despite outstanding requests for production of documents which Claimant has refused to respond to.

31. Claimant relies on a document called an "AFFIDAVIT OF SALE" as the assignment. But the so called "AFFIDAVIT OF SALE" is deficient in ways including but not limited to the following.

   a. The so called "AFFIDAVIT OF SALE" does not identify the Debtor in any way.

   b. The so called "AFFIDAVIT OF SALE" does not have the account number for the account which is the subject matter of this proof of claim.

32. The so called "AFFIDAVIT OF SALE" cannot possibly be the true assignment because it refers to another document called a "Purchase and Sale Agreement." But the "Purchase and Sale Agreement" was not included with the proof of claim or supplied to Debtor's Counsel after duly served discovery requests ignored by Claimant's Counsel.

33. Claimant has refused to produce even a redacted copy of the so called "Purchase and Sale Agreement" even though document production requests have been served on Claimant's Counsel on September 6, 2023.

34. The so called "Purchase and Sale Agreement" is a "writing" upon which the claim is based and should be attached to the POC per Federal Rule of Bankruptcy Procedure 3001, and ought to be produced or the claim should fail.

35. Claimant has also attached a so called "BILL OF SALE" dated November, 2022. But that document is also problematic for reasons including but not limited to the following.

   a. The so called "BILL OF SALE" does not identify the Debtor in any way.

   b. The so called "BILL OF SALE" does not have the account number for the account which is the subject matter of this proof of claim.

36. The so called "BILL OF SALE" refers to another document called the "Forward Flow Accounts Purchase Agreement dated as of 10th day of November, 2022." But the "Forward Flow Accounts Purchase Agreement dated as of 10th day of November, 2022" was not included with the proof of

claim or supplied to Debtor's Counsel after duly served discovery requests ignored by Claimant's Counsel.

37. Claimant has refused to produce even a redacted copy of the so called "Forward Flow Accounts Purchase Agreement dated as of 10th day of November, 2022" even though document production requests have been served on Claimant's Counsel on September 6, 2023.

38. The so called "Forward Flow Accounts Purchase Agreement dated as of 10th day of November, 2022" is a "writing" upon which the claim is based and should be attached to the POC per Federal Rule of Bankruptcy Procedure 3001, and ought to be produced or the claim should fail.

39. The so called "Forward Flow Accounts Purchase Agreement dated as of 10th day of November, 2022" would be the best evidence of the assignment of the account if there were an assignment at all.

40. Federal Rule of Evidence 1002 provides as follows.

> Rule 1002. Requirement of the Original

> An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.

41. Claimant's so called "Bill of Sale" and the so called "Affidavit of Sale" are not the assignment and they do not prove the content of the assignment. They are documents about the assignment. Claimant should be required to produce the best evidence of the assignment which according to Claimant's own documents may at least include the "Forward Flow Accounts Purchase Agreement dated as of 10th day of November, 2022."

42. The true underlying assignment documents are an essential part of the Claim and for substantive reasons failure to provide the assignment should be fatal to the claim. See Four Seasons Investments, LLC v. Susan Petrucci, No. AR-10-005022I. in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, Wettick, J.-May 10, 2011.

Wherefore, Debtor requests an order sustaining her objection to the proof of claim for lack of documentation and contradictory documents and factual statements made by the Claimant and Claimant's Counsel. Debtor requests that the Proof of Claim be stricken and disallowed with prejudice. In the alternative Debtor requests that the claim be modified and reduced. Debtor requests such additional relief as this Honorable Court deems just and proper.

/s/ Vicki Piontek  11-20-2023

_____  _____
Vicki Piontek, Esquire   Date
Attorney for Debtor
58 East Front Street
Danville, PA 17821
215-290-6444
Fax: 866-408-6735