# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Maranda Nichole Grasley | CHAPTER 13 |
| Debtor(s) | |
| | BKY. NO. 22-02354 MJC |
| Midland Credit Management, Inc. | |
| Respondent | Related to: 126, 127, 134, 135 |

## RESPONSE TO MOTION IN LIMINE TO EXCLUDE DOCUMENTS - PROOF OF CLAIM NUMBER 5 (OLD NAVY)

Midland Credit Management, Inc, by and through its counsel, KML Law Group, PC hereby responds to the Motion in Limine to Exclude Documents filed by Debtor, Maranda Grasley, as follows:

**PRELIMINARY STATEMENT**:

Just because Debtor is unable to overcome the prima facie validity of Secured Creditor's Proof of Claim does not provide a basis for suppressing documents properly attached to the Proof of Claim. The undisputed facts in the case are that debtor, Maranda Grasley, took out a credit card on or about June 10, 2021; Grasley made charges and payments on the card until it was charged off on June 3, 2022; the original credit card issuer, Synchrony Bank (hereinafter "Synchrony"), sold the account to Midland Credit Management, LLC (hereinafter "MCM") on November 12, 2022. Synchrony sent Grasley a letter on December 1, 2022 advising her that the credit card account had been sold to MCM.

As part of the sales transaction, Synchrony provided multiple items to MCM including but not limited to: a data tape containing the account level information on all accounts that were sold; the credit card agreement in place at the time the account was charged off; an Affidavit of Sale of Account by Original Creditor setting forth that the electronic data tape were electronic business records of the accounts (Notification Files); a Bill of Sale; and copies of monthly credit card statements for the account.

MCM filed a Proof of Claim and an Amended Proof of Claim containing all of the items required pursuant to <u>F.R.B.P.</u> 3001. At no point has debtor produced any evidence in this matter, yet alone any that to rebut that the debtor obtained the subject credit card; used the credit card; made payments on the credit card; and that the credit card account was sold by the issuer to MCM. The smoke and mirrors and red herrings are nothing more than an attempt by debtor and her counsel to increase the cost of litigation in the hopes that MCM will walk away from its valid Proof of Claim.

## COUNT ONE: "AFFIDAVIT OF SALE"

1. Admitted that the Bill of Sale was attached to the Amended Proof of Claim which includes the Affidavit of Sale. Denied as to the rest.
    a. Denied. MCM purchased a pool of charged of credit cards from Synchrony. The Bill of Sale that was part of the documentation references "the Accounts as set forth in the Notification Files delivered by Seller to Buyer on or about 12th day of November 2022..." The Bill of Sale lists the name of the Notification File/data file (Midland (SOBRMAGS) – RF Aged BULK – November 2022). This matches the

Page 2

filename of the Notification File provided by the Seller to MCM. The Bill of Sale further set forth,

> "With respect to information for Accounts summarized in the Notification Files, the Seller represents and warrants to Buyer that (i) the Account information constitutes the Seller's own business records and accurately reflects in all material respects the information in the Seller's database; (ii) the Account information was kept in the regular course of business; (iii) the Account information was made at or near the time by, or from information transmitted by, a person with knowledge of the data entered into and maintained in the Account's database; and (iv) it is the regular practice of the Seller's business to maintain and compile such data.

    b. Denied. The Affidavit of Sale references other documentation under this transaction by referring to the "electronic records" the relevant part of which was attached to the Amended POC. The Bill of Sale lists the name of the Notification File/data file (Midland (SOBRMAGS) – RF Aged BULK – November 2022). This matches the filename of the Notification File provided by the Seller to MCM that contains the account level information.

    c. Denied. This ignores the fact that multiple documents were executed and exchanged as part of this transaction. The account data was provided in the Notification Files as referenced in the Bill of Sale and generally in the Affidavit of Sale as "electronic records". The Bill of Sale lists the name of the Notification File/data file (Midland (SOBRMAGS) – RF Aged BULK – November 2022). This matches the filename of the Notification File provided by the Seller to MCM that contains the account level information.

2. Denied. The "Affidavit of Sale" was one of many documents that were executed in relation to the sale of the pool of charged-off credit cards. Pursuant to F.R.E. 803(6) it is clearly a business record for which the DEBTOR bears the burden of showing "that the source of

the information or the method or circumstances of preparation indicate a lack of trustworthiness." See, F.R.E. 803(6)(E). Aamco Transmission v. Baker, the unpublished Eastern District case cited by Debtor, has zero application to the case at bar. Aamco deals with the admission of audio-recording, debriefing material from an undercover investigation from shoppers and investigators, not closing documents from a commercial transaction.

3. Denied. Pursuant to F.R.B.P. 3001, a Proof of Claim for an open-end or revolving consumer credit agreement shall contain:

   i. The name of the entity from whom the creditor purchased the account;
   ii. the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
   iii. the date of an account holder's last transaction;
   iv. the date of the last payment on the account; and
   v. the date on which the account was charged to profit and loss.

4. Denied. F.R.E. 1002 is inapplicable to the facts of this case. This Rule is applicable in situations where there is a contest to the genuineness of a document or signature, that is not an issue present in this case

### COUNT TWO: "BILL OF SALE"

5. This is a statement to which no response is required.

6. Admitted.

7. Denied.

   a. Denied. This ignores the fact that multiple documents were executed and exchanged as part of this transaction. The account data was provided in the Notification Files as references in the Bill of Sale and generally in the Affidavit of Sale as "electronic records". The Bill of Sale lists the name of the Notification

File/data file (Midland (SOBRMAGS) – RF Aged BULK – November 2022). This matches the filename of the Notification File provided by the Seller to MCM that contains the account level information.

    b. Denied. This ignores the fact that multiple documents were executed and exchanged as part of this transaction. The account data was provided in the Notification Files as references in the Bill of Sale and generally in the Affidavit of Sale as "electronic records". The Bill of Sale lists the name of the Notification File/data file (Midland (SOBRMAGS) – RF Aged BULK – November 2022). This matches the filename of the Notification File provided by the Seller to MCM that contains the account level information.

8. Admitted that the Forward Flow Accounts Purchase Agreement was not attached to the Amended Proof of Claim. Denied as to the rest.

9. Denied.

10. Denied. The Proof of Claim and Amended Proof of Claim fully comply with the requirements of the Federal Rules of Bankruptcy Procedure and must be afforded prima facie validity. Debtor has produced NO evidence, let alone credible evidence to overcome her burden. Debtor attempts to improperly add additional requirements to F.R.B.P. 3001. Pursuant to F.R.B.P. 3001, a creditor's Proof of Claim for an open-end or revolving consumer credit agreement shall contain:

    i. The name of the entity from whom the creditor purchased the account;
    ii. the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
    iii. the date of an account holder's last transaction;
    iv. the date of the last payment on the account; and
    v. the date on which the account was charged to profit and loss.

All of these elements are present in the Amended Proof of Claim filed by creditor in this case.

11. Denied. <u>F.R.E.</u> 1002 is inapplicable to the facts of this case. This Rule is applicable in situations where there is a contest to the genuineness of a document or signature, that is not an issue present in this case

12. Denied. Debtor has produced zero evidence in this case. There is no question that MCM purchased this credit card account from the credit card issuer.

13. Denied. Creditor, MCM, HAS produced sale documents unlike the plaintiff in <u>Four Seasons Investments v. Petrucci</u>.

## COUNT THREE: "AFFIDAVIT IN SUPPORT"

14. This is a statement to which no response is required.

15. Admitted.

16. Admitted. The Affidavit was submitted in support of the reply to Debtor's objection to Creditor's Proof of Claim.

17. This is a legal conclusion to which no response is required. To the extent a response is required, denied.

18. Denied. The Affidavit was made as part of active litigation.

19. This is a legal conclusion to which no response is required. To the extent a response is required, denied.

20. This is a legal conclusion to which no response is required. To the extent a response is required, denied.

COUNT FOUR: Purported Governing Contract/Cardholder Agreement Offered By Claimant

21. This is a statement to which no response is required.

22. Admitted.

23. Denied.

   a. Denied. A signature is not required on a credit card holder agreement.

   b. Denied. Pursuant to the card holder agreement, it may be updated from time to time. When an update is done, the new agreement is sent to the credit card holder.

   c. Admitted. A credit card holder agreement is the general terms governing all of the credit cards subject to the agreement.

   d. Denied. The initial credit card agreement was sent to the debtor with the physical credit card. The debtor clearly received the credit card (and card holder agreement) as she used the credit card.

   e. Agreed that there is no account number on the credit card holder agreement. Denied that the document is not linked to the invoices supplied by Claimant.

   f. Denied. The Affidavit of Angel Nayman specifically sets forth that the credit card was opened on or about June 10, 2021. When opened, Synchrony mailed the credit card and a copy of the credit card agreement to the cardholder. Synchrony's records reflect that the card and agreement were mailed to debtor on or about June 13, 2021.

24. Admitted insofar as the Affidavit speaks for itself. Denied as to the rest.

25. Denied.

26. Admitted. The credit card holder agreement filed with the Amended Proof of Claim is the agreement that was in place on June 3, 2022 when the account was charged off. The credit

card agreement in the Affidavit of Angel Nayman was the credit card holder agreement in place when the credit card account was opened on June 10, 2021.

    a. Denied. This statement is unclear as to what debtor is referring.

    b. Admitted insofar as the documents speak for themselves. Denied as to any characterization of the documents.

    c. Creditor is without information or belief as to Margaret Keane's status in relation to Synchrony Bank. Notwithstanding same, the credit card agreement attached to the Affidavit of Angel Nayman is the one that was in place in 2021 when the credit card account was opened.

    d. Admitted insofar as the documents speak for themselves.

    e. Admitted insofar as the Affidavit speaks for itself. Denied to the characterization that there is a conflict in the cardholder agreements. As explained above, the cardholder agreement attached to the Affidavit of Angel Nayman is the agreement that was in place when the account was opened. The cardholder agreement attached to the Amended Proof of Claim is the agreement that was in place when the account was charged off. There is no conflict as the later agreement supersedes the original.

## CONCLUSION

27. This is a statement to which no response is required.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

Wherefore, Creditor, Midland Credit Management, Inc, hereby requests that the Motion in Limine be denied and for any other relief the Court may deem just and proper.

        BY:    /s/ Brian C. Nicholas
                Brian C. Nicholas, Esquire
                Atty Id: 317240
                KML Law Group, P.C.
                701 Market Street
                Suite 5000
                Philadelphia, PA 19106

                bnicholas@kmllawgroup.com
                201-549-2366

                Dated: 12/11/2023